D.C. *vs.* J.S.

No. 01-P-1063.

Plymouth. February 7, 2003. - June 16, 2003.

Present: PORADA, KAPLAN, & COHEN, JJ.

*Divorce and Separation,* Child custody, Modification of judgment. *Minor,* Custody. *Parent and Child,* Custody of minor.

In a civil action brought by a divorced father seeking physical custody of his two minor children after the mother proposed to relocate with them from the former marital home in eastern Massachusetts to a location in the western part of Massachusetts, this court remanded the decision awarding custody to the father for reconsideration in light of *Rosenthal* v. *Maney*, 51 Mass. App. Ct. 257 (2001). [355-357]

COMPLAINT for divorce filed in the Plymouth Division of the Probate and Family Court Department on July 8, 1996.

A complaint for modification, filed on June 14, 1999, was heard by *Catherine P. Sabaitis*, J., and motions for a new trial and to amend or alter the judgment were also heard by her.

*John T. Ouderkirk, Jr.*, for the mother.

*John J. McGlone, III*, for the father.

KAPLAN, J. After the parties' divorce, the mother, having primary physical custody of two minor children, proposed to relocate with them from the former marital home in eastern Massachusetts (near the residence or place of work of the father) over a considerable distance to a location in the western part of the State. The father responded by applying for the award of physical custody to himself, with the effect of denying the proposed relocation. The judge's decision for the father was handed down shortly before the publication of *Rosenthal* v. *Maney*, 51 Mass. App. Ct. 257 (2001). The proceeding will be remanded for reconsideration in the light of that case. We write, briefly, to describe the setting of the litigation and remand order.

## BACKGROUND

1. The father and mother were married on June 10, 1989, and two children were born of the marriage, a girl, on June 20, 1991, and a boy, on August 18, 1994. On October 9, 1997, the parties were divorced, the judgment becoming absolute on January 7, 1998. By the terms of an incorporated agreement, the mother secured primary physical custody of the children, subject to the father's visitation, and the father and mother shared legal custody. The former marital home, where the mother and children resided, was in Norwell, the town where the father maintained his practice as a lawyer.

2. The father commenced the present action on June 14, 1999, seeking a modification of the divorce judgment to award primary physical custody of the children to himself. This followed the mother's letter to the father dated April 10, 1999, in which she notified him of her decision to move with the children in June to the vicinity of Springfield. The mother filed an answer with counterclaim on July 14, 1999 (the counterclaim being subsequently amended) requesting permission to relocate to the Holyoke area (with various changes in visitation); among further requests, she sought an end to her obligation to join in efforts with a mediator to settle any differences with the father.

A temporary order of July 19, 1999, provided the children would remain in the mother's physical custody, with visitation as theretofore, if the mother remained in Norwell or a contiguous town. The mother moved with the children to such a town, Marshfield, on September 1, 1999 (the Norwell house having been sold on June 30, 1999).

Trial of the action occurred on nine occasions from June to August, 2000, and the judge's judgment, findings, and rulings of law entered on November 17, 2000, in effect denying the mother permission to relocate and awarding primary physical custody to the father, subject to the mother's visitation. The mother appeals.[1]

3. It is not doubted or contested that during the period of the

---

[1]The appeal is from the judgment and also from orders denying motions to alter or amend the judgment and for a new trial. The orders do not require separate treatment.

mother's primary physical custody, just as in the years of the marriage, she was a loving and caring parent. The same was true of the father as parent. The mother agrees with this opinion about the father, the father is of the same view about the mother, and like positive appraisals about both come from other observers of the family.

Acerbities, however, between the mother and father which arose during the marriage have persisted and perhaps worsened following the divorce. The mother saw the father as overbearing and stubborn. The father was no less critical of the mother. Their styles were ill suited to each other. The difficulties between them led to the nomination in the divorce judgment of a mediator, Dr. Vicki Lyall (whom the parties had consulted before the divorce), to help to end disputes about visitations and other matters affecting the children. Some of these issues might appear to an outsider to be merely commonplace or trivial.[2] At times the mother and father, seriously troubled in communicating with each other in person, have been reduced to using a "notebook."

In October, 1998, and again in February, 1999, the mother placed the marital home in Norwell for sale with a broker, but she did so surreptitiously. These actions were indicative of the mother's intention to relocate with the children, but the father was first notified of this purpose by the letter of April 10, 1999, which, as noted, apparently precipitated the present action by the father to modify the divorce judgment.

4. The mother was born and lived for many of her early years in the area of Holyoke but had resided elsewhere for some twenty years by the time of the instant trial. As of 1998-1999 her brother and sister still lived in that neighborhood, as did her mother who was seriously ill and not expected long to survive. The mother's former friends there had moved away. The children were acquainted with the maternal side of the family through visits there; so also they knew the father's large family and many relatives. The mother believed her contemplated life in Holyoke would be congenial for herself and suitable for the children (the effect on the children being possibly enhanced by

---

[2]The parties did not take casually a mixup in the handing over of the children from father to mother described at some length in the judge's findings.

the improvement in the mother's outlook on life). The mother had inquired about the quality of the public schooling available for the children and thought it satisfactory. For herself, as a former teacher, she had inquired about local sources for maintaining her certification and for upgrading her education and thereby broadening her work opportunities. She had looked into the real estate market in the area and found prices there to be lower than in the east for comparable housing. With these prospects she sought permission in her counterclaim to make the change (the father's visitation rights to be revised accordingly).

## *JUDGE'S VIEWS*

The judge in her findings and conclusions did not think well of the mother's secretiveness about disposing of the Norwell house. The judge thought the mother's planned move of the family's center of gravity a long distance from Norwell was not, or was not so much, motivated by her wish to reconnect with her old roots in Holyoke, as it was to distance herself from the father, which at the same time would likely tend to weaken his relations with the children. Not only, the judge thought, would the mother's plan favor her own desires above, and to the probable sacrifice of, those of the father, it would also disadvantage the children, who would be abruptly torn from their school and lifetime surroundings and friends. Any claim about career or educational opportunities for the mother in the west could surely be matched by those available in the east.

Besides faulting the mother for her selfish design, as the judge saw it, the judge considered that the mother had misbehaved in her relations with the mediator. The judge believed the mediation ordered at the time of the divorce was indispensable to the management of the split family. The judge thought Dr. Lyall had done well in the circumstances, the mother thought otherwise, but the point was that the mother had failed to cooperate reasonably with the mediator as she was obligated to do. (Among the prayers in the mother's counterclaim was the termination of mediation.) The judge remarked on the mother's behavior in the course of the litigation proper: she was wilful in her testimony, choosing what she wanted and did not want to answer.

## *ANALYSIS*

Presented with the mother's desire to relocate to a place at a distance inconvenient for the father, which was responded to by the father's application to the court for a change of the physical custody of the children,[3] the judge naturally resorted first to the statutes. General Laws c. 208, § 28, as appearing in St. 1985, c. 490, § 1, provides that the parent seeking the change of custody shall demonstrate that "a material and substantial change in the circumstances of the parties has occurred and the judgment of modification is necessary in the best interests of the children."[4] As to the request for relocation, the analogical reference was to G. L. c. 208, § 30, which permits the court "upon cause shown" to order that a minor child of divorced parents under custody may "be removed out of this commonwealth."[5] We suppose the parties would agree that the consideration and evaluation of the visitation and other custodial conditions for the child that would result from relocation to a distant part of the State will resemble those applied to removal beyond the State boundaries.[6] Applications for court decision in cases in which a parent seeks to relocate within the Commonwealth should not be routine but are proper only where the

[3]"Efforts by a custodial parent to relocate a child out of the Commonwealth often give rise to a claim for custody by the parent not seeking the move." *Rosenthal* v. *Maney*, 51 Mass. App. Ct. at 261.

[4]See the judge's conclusions of law 11 and 12: "To warrant the transfer of custody from one parent to the other, following a determination of custody in a divorce proceeding, there must be a significant change in circumstances. That change must be of sufficient magnitude to satisfy the governing principle by which the court must be guided in these cases, namely, whether the transfer of custody will be conducive to the welfare of the children," and "[t]he uprooting of a child should be done only for compelling reasons."

[5]See the judge's conclusions of law 14-19. *Yannas* v. *Frondistou-Yannas*, 395 Mass. 704 (1985), is cited for the propositions that " 'upon cause shown' mean[s] only that removal must be in the best interests of the child" (*id.* at 711), a "real advantage" (*ibid.*), but "[e]very person, parent and child, has an interest to be considered" (*id.* at 711-712).

[6]The judge stated in conclusion of law 13, concerning relocations within the State, "It is likely that a court will apply the test of whether the relocation constitutes a real advantage to the child, a test employed in applying the statute governing out-of-state moves," quoting from Kindregan & Inker, Family Law and Practice § 47.15.1 (2d ed. Supp. 2002). See *Rosenthal* v. *Maney*, 51 Mass. App. Ct. at 265 n.11.

relocation would evidently involve significant disruption of the noncustodial parent's visitation rights and the parents cannot agree.

Left to reason and experience is the question of the approach to be taken when a claim to a shift of custody faces a claim to relocate. Considering the custody question, the judge duly and fairly recorded the mother had done well in her longstanding custodial role — this despite attitudinal difficulties in her relations with the father (which might affect the children to some degree) and despite her occasional managerial mistakes regarding visitations and the like. Here one needs to observe there was little reason to predict that the father's putative situation and conduct as primary custodian would work any improvement. We may conclude that, putting to one side and excluding the whole matter of relocation, it is doubtful that the father could have made the case for a change of the custody in his favor under § 28.

The judge tended to bolster the case for the father's custody by recounting and commenting upon the mother's behavior in respect to relocation. The mother, the judge intimated, withheld disclosure of the plan to sell the house incident to her intended departure from Norwell, and she contrived a set of dubious justifications for the proposed move, when her true purpose was to escape the Norwell area, thereby putting distance not merely topographic between herself and the father, with the result, whether or not intended, of weakening the father's communion with the children. Under a duty to participate in good faith in mediation efforts, the mother rebelled and, in particular, refused to join in any mediation of the question of relocation. Add to all this that the mother was not candid or forthcoming in the very litigation.

Was it proper for the judge thus to answer the question of custody on the basis in some part of the infusion of matters having to do with escape and relocation? Is such a melange or mixture or blending proper? Note that for practical purposes a result favorable to the father on custody was the equivalent of a denial of the mother's request to relocate, since the mother

would not put herself at a distance from the children, and in fact remained in the Norwell vicinity.

The case of *Rosenthal* v. *Maney*, 51 Mass. App. Ct. 257 (2001), teaches an antimixture, more sensible approach. In that case the mother, with longtime custody of the son, lived with him in Shrewsbury; the father lived nearby, in Northborough, and had usual visitation. The mother intended to remove with the child to Providence, Rhode Island, where she intended to make a home with a man she planned to marry, who was, as it happened, a resident of Providence. This location would be nearer and more convenient to her place of work which was actually in Providence. *Id.* at 258-259. In the litigation between mother and father, the father succeeded after trial. Id. at 259-261. Our court reversed. The point of our decision was this: "[A] request for modification of custody is distinct from a request to relocate and must be based on a material and substantial change in circumstances other than the move . . . ." *Id.* at 261. See *Hernandez* v. *Branciforte*, 55 Mass. App. Ct. 212, 220-221 (2002).[7]

In the *Rosenthal* case, we were able, on the record made at trial, first, to hold there was no ground to disturb the custody (§ 28) and, second, on quite distinct consideration, to hold there was reason — a "real advantage" — to support the removal (§ 30). See *Rosenthal* v. *Maney*, 51 Mass. App. Ct. at 262-267. The question of the claimed justification for the removal was pursued in *Rosenthal* in considerable detail, weighing in turn the interest of each person affected. We were in a position to make final disposition. *Id.* at 267-272.

In the present instance we think it preferable to ask the judge to reexamine the case in the light of the *Rosenthal* decision. Accordingly, the case is remanded for the application of the *Rosenthal* decision to the evidence of record, supplemented, to the extent necessary or desirable, by evidence that may be of-

---

[7]"Move" (relocation) includes the circumstances related to the move.

The judge in the present case did not mean to hold, nor could the record support a holding, that the mother's conduct in respect to the relocation was malign and blemished her character to such an extent as to disqualify her for custodianship.

fered by the parties, including any such evidence arising from happenings following the date of the judgment appealed from.

*So ordered.*