JACK NICHOLAS SARKISIAN[1] *vs.* ROBERTA F. BENJAMIN.

No. 03-P-1265.

Middlesex. June 15, 2004. - January 7, 2005.

Present: LAURENCE, PORADA, & MILLS, JJ.

*Attorney at Law,* Malpractice. *Evidence,* Legal malpractice. *Judicial Immunity. Minor,* Guardian ad litem. *Probate Court,* Guardian ad litem.

The defendant, an attorney appointed by a Probate Court judge to represent the minor plaintiff in actions pertaining to the minor's custody and maintenance, was entitled to absolute immunity from his legal malpractice claims for damages resulting from the defendant's allegedly negligent preparation of a report and recommendations to the court, where the defendant was acting in a quasi judicial capacity in those proceedings as a guardian ad litem and needed to act freely without the threat of personal liability. [745-746]

CIVIL ACTION commenced in the Superior Court Department on November 9, 1999.

The case was heard by *Thomas E. Connolly,* J., on a motion for summary judgment.

*Richard D. Clarey* for the plaintiff.

*George A. Berman (Marjunette deMagistris* with him) for the defendant.

PORADA, J. The minor plaintiff (child) by his next friend filed an action in the Superior Court for legal malpractice against the defendant as a result of her work on his behalf in two actions brought in the Middlesex Probate and Family Court by his father against his mother pertaining, among other matters, to the child's custody and maintenance. The defendant had accepted an appointment as the child's attorney by a judge of the Probate and Family Court. The defendant filed a motion for summary judgment. A judge of the Superior Court allowed the defendant's

[1]A minor, by his next friend, Clyde Bergstresser.

motion and dismissed the action on the grounds that, when the defendant acted as the child's attorney in those proceedings, she was acting in a quasi judicial capacity as a guardian ad litem and was entitled to absolute immunity from suit, and the defendant's actions in those proceedings were not the proximate cause of the emotional distress claimed by the child. We affirm the judgment.

We summarize the pertinent, uncontested facts. The defendant was appointed by the probate judge under an order which in part read as follows:

> "This matter came on for hearing before the [c]ourt. It appears to the court that the protection of the best interests, rights or wishes of the child(ren) clearly requires independent representation.
>
> "Whereupon, the court appoints Roberta F. Benjamin . . . to serve in the capacity of counsel for the child(ren) at the trial. The attorney for the child(ren) shall represent the child(ren) in all hearings wherein the interests of the child(ren) are involved, including trial, and shall have the same rights of any other attorney in the action, including, but not limited to, discovery proceedings, cross-examination, and requiring attendance of witnesses.
>
> ". . .
>
> "The attorney for the child(ren) shall file an initial written report and recommendation with [the probate judge] on or before December 6, 1996. When the attorney for the child(ren) has completed his/her preparation and initial report and recommendation, he/she shall provide copies of same to the attorneys for the parties and to the court. Said report shall make specific reference to the following factors with respect to each child involved: (1) the age of the child and the parties; (2) the health of the child and the parties; (3) the scholastic performance of the child; (4) the interests and activities of the child; (5) the demonstrated capacity of each party to foster the growth and development of the child; (6) each party's demonstrated ability to provide continuity and stability of environment; (7) the length of time the child has resided in each such environ-

ment; (8) the demonstrated capacity of each party to cooperate with and to provide access to the child's other caregivers; (9) the relationship and attachments of the child to his or her parents, siblings, and any other person who may have a significant effect upon the child; (10) the expressed preference of the child; and (11) the child's ability to express a meaningful preference. After receipt of said written report from the attorney for the child(ren), the court shall set the matter down for pre-trial conference/ trial.

"The attorney for the child(ren) is to be paid by the father in the first instance at her usual hourly rate for all time spent in preparing for and being present at and participating in the trial."

Pursuant to this order, the defendant met with the child and both of his parents in their respective homes, spoke with the father's and child's therapists and a Department of Social Services investigator, and reviewed voluminous hospital and psychiatric reports, correspondence, pleadings, and deposition testimony of the father and mother and the mother's psychiatric nurse. The defendant filed her report and recommendations with the Probate and Family Court. In her report she recommended, among other things, that both parents retain legal custody of the child; that the father continue to retain physical custody of the child; that the father pay to the mother $850 per month in alimony for a period of five years in order to enable the mother to obtain a suitable place to live near her son in order for her to exercise her visitation rights; that the mother have certain visitation rights with the child, which were to be expanded upon the mother's obtaining a suitable place to live; and that the mother's prior order for payment of child support of twenty dollars per week to the father and all arrearage owed by the mother under that order be terminated. After a brief hearing before the judge, at which the father, acting pro se, and the mother's attorney appeared, mother and father entered into a stipulation adopting most of the defendant's recommendations, including those enumerated above, and the same were incorporated into a judgment approved by the probate judge on January 28, 1997. The judgment also provided that the defendant would monitor the

exercise of the mother's visitation rights and make recommendations concerning the same after the mother obtained a suitable home for herself. Pursuant to the stipulation, the defendant filed a follow-up report with the court on July 23, 1997, and recommended that the mother's visitation rights be expanded based on her having obtained a suitable place to live and on the child's desire to spend more time with his mother. In August, 1997, the defendant wrote to the mother and father advising them that she was still the attorney for the child and expected to be copied with correspondence and pleadings between the two. The record does not indicate that she had any further contact with the mother, father, or child thereafter.

In December, 1997, in order to meet his financial obligations, including the payment of the defendant's fee and his alimony obligations, the father sold the residence in which he and his son had made their home. On April 5, 1999, the mother and father entered into an agreement for judgment giving the father sole legal and physical custody of the child in consideration of a lump sum payment of $7,500 in lieu of any further alimony.

In November, 1999, on behalf of himself and the child, the father commenced this action against the defendant for legal malpractice. The defendant filed a motion to dismiss on the ground that her work was performed in a quasi judicial capacity entitling her to immunity from damage claims. A judge of the Superior Court allowed the motion as to the father's claim based on her ruling that the defendant owed him no duty. As for the child's claim, the judge denied the motion, disqualified the father from continuing to represent his son in this matter, and appointed a guardian ad litem to investigate the merits of the claim. The guardian ad litem reported that the claim did not appear to have sufficient merit and that she did not believe that the pursuit of the claim was in the child's best interests. Notwithstanding the guardian ad litem's recommendation, the child's new attorney continued to pursue this action and filed an amended complaint in which he alleged that the defendant was negligent in having made recommendations regarding fiscal and visitation matters resulting in harm to the child by virtue of his displacement from his home and erratic visitation by his mother. Upon the allowance of summary judgment for the defendant, the child appealed the dismissal of his claim.

The child argues that the defendant is not protected by judicial immunity because she was appointed to act as the child's attorney and as such she owed the same duty to him that a privately retained attorney would owe to his or her client. While it is true that an attorney who accepts a court appointment is ordinarily held to the same standards as a retained attorney, see S.J.C. Rule 3:07, Mass.R.Prof.C. 6.2 comment 3, 426 Mass. 1416 (1997), the mere fact that the defendant's order of appointment designated her to act as the child's attorney does not resolve the question of her entitlement to immunity in this action. Rather, we must look to the duties she was asked to perform that give rise to the malpractice claim. See *LaLonde* v. *Eissner*, 405 Mass. 207, 212 (1989) (whether one is entitled to immunity as a quasi judicial officer depends on an analysis of the functions one performs). While she was assigned to represent the child at any hearing or trial, she was also asked to report and make recommendations to the court on specified topics relating to the child. The latter function is one ordinarily performed by a guardian ad litem appointed by the court pursuant to G. L. c. 215, § 56A. In the performance of that function, the guardian ad litem acts as an arm of the court and is an integral part of the judicial process. See *Gilmore* v. *Gilmore*, 369 Mass. 598, 604 (1976). As such, a guardian ad litem in that capacity should be entitled to absolute immunity in order to enable the guardian ad litem to act freely without the threat of personal liability.[2] Compare *LaLonde* v. *Eissner*, 405 Mass. at 208, 212 (in a parental visitation dispute, a psychiatrist selected by the probation department acting pursuant to a judge's order was entitled to immunity in an action based on his allegedly negligent evaluation of the parents and their minor child). Cf. *Temple* v. *Marlborough Div. of the Dist. Ct. Dept.*, 395 Mass.

[2]Other jurisdictions have held that guardians ad litem, who perform quasi judicial duties for the court such as gathering information, preparing reports, and making recommendations, are entitled to absolute immunity from suit. See *Cok* v. *Consentino*, 876 F.2d 1, 3 (1st Cir. 1989); *Kurzawa* v. *Mueller*, 732 F.2d 1456, 1458 (6th Cir. 1984); *Myers* v. *Morris*, 810 F.2d 1437, 1467 (8th Cir.), cert. denied, 484 U.S. 828 (1987); *Tindell* v. *Rogosheske*, 428 N.W.2d 386, 387 (Minn. 1988); *State ex rel. Bird* v. *Weinstock*, 864 S.W.2d 376, 385 (Mo. App. 1993); *Fleming* v. *Asbill*, 326 S.C. 49, 54-57 (1997); *Delcourt* v. *Silverman*, 919 S.W.2d 777, 786 (Tex. App. 1996), cert. denied, 520 U.S. 1213 (1997); *Paige K.B.* v. *Molepske*, 219 Wis. 2d 418 (1998).

117, 133 (1985) (clerks of court acting at judge's direction entitled to immunity in suit alleging unlawful commitment); *Chicopee Lions Club* v. *District Attorney for the Hampden Dist.,* 396 Mass. 244, 252 (1985), quoting from *Andersen* v. *Bishop,* 304 Mass. 396, 400 (1939) (prosecutor immune from suit involving conduct "in discharge of . . . . official duties").

Here the child's complaint against the defendant rests on the grounds that her report and recommendations were negligently prepared and made. Specifically, the plaintiff argues that, based on his father's financial condition, which was made known to the defendant, the defendant should have foreseen that her recommendations on fiscal matters would cause the forced sale by the father of his and the child's home and that the defendant should have known from the mother's well-documented psychiatric history and past behavior that the recommended visitation plan would not work out and would cause harm to the child.

The child also argues that the defendant failed to properly monitor the visitation of the child with the mother. This role was assigned to the defendant in the stipulation executed by the father and mother which was incorporated into the judgment settling the father's actions against the mother. The role evolved out of the defendant's duties as a guardian ad litem in which she continued to perform a service for the court in investigating the facts, mediating the visitation problems in the first instance, and making recommendations pertaining to the same. In monitoring visitation, the defendant continued to act in a quasi judicial capacity, performing a service for the court akin to her duties as a guardian ad litem.

Because all of the child's claims for damages arise out of duties performed by the defendant as a guardian ad litem or in a quasi judicial capacity, we conclude that she is entitled to absolute immunity from the child's damages claims. In light of our conclusion that summary judgment was appropriate on this ground, we need not discuss the child's claim that the judge also erred in ruling that the child lacked proof of a causal relationship between any harm he suffered and the defendant's alleged negligence.

*Judgment affirmed.*