ANGELA PIZZINO[1] vs. PATRICK MILLER.

No. 05-P-1254.

Plymouth. May 5, 2006. - December 26, 2006.

Present: GRASSO, COWIN, & KAFKER, JJ.

*Parent and Child,* Custody. *Minor,* Custody. *Divorce and Separation,* Child custody, Modification of judgment.

Where, in hearing a motion to amend a judgment of divorce nisi to permit the mother to remove the children to South Carolina in order to join her new husband, the Probate and Family Court judge discounted the significance of the mother's remarriage, this court vacated the judgment denying the request to remove the children and remanded the matter to permit the judge to determine whether the move is in fact legitimately advantageous from the mother's viewpoint and, if so, to consider whether the best interests of the children would be served by such a move. [869-875]

There was no merit to the contention that a Probate and Family Court judge hearing a motion to amend a judgment of divorce nisi to permit the mother to remove the children to South Carolina relied excessively on the report of a guardian ad litem. [875-876]

COMPLAINT for divorce filed in the Plymouth Division of the Probate and Family Court Department on September 5, 2001.

A complaint for modification of judgment, filed on May 5, 2003, and a complaint for contempt, filed on June 18, 2003, were heard by *Michael J. Livingstone,* J.

*Elaine Epstein* (*Maureen McBrien* with her) for the mother.

*John E. Studley, Jr.,* for the father.

COWIN, J. Applying *Yannas* v. *Frondistou-Yannas,* 395 Mass. 704, 710-712 (1985) (Yannas), a judge of the Probate and Family Court denied the request of the divorced plaintiff, Angela Pizzino (the mother), for permission to leave the Commonwealth with her minor children, ages eight and seven at the time of

[1] Formerly known as Angela Antonelli.

trial.[2] The mother appeals, arguing essentially that (1) the judge misconstrued the legal criteria applicable to the removal of children by a custodial parent postdivorce; (2) the judge's findings of fact are either clearly erroneous or against the weight of the evidence; and (3) the judge relied too heavily on the report of a guardian ad litem whose own findings and recommendations accorded insufficient weight to the changed circumstances created by the mother's remarriage. The defendant, Patrick Miller (the father), asserts that the judge correctly applied the so-called "real advantage" test of *Yannas, supra*; his subsidiary findings are not clearly erroneous and are entitled to deference; and his ultimate determination that the proposed move is not in the children's best interests is not the product of an abuse of discretion. Recognizing the difficulties inherent in these cases, we conclude that the judge misapplied certain principles. This influenced, or may have influenced, the findings to an extent that a remand is required.

1. *Background.* We state certain background facts based on findings of the trial judge that are supported by the evidence. The parties were married on January 12, 1991. Two sons were born of the marriage: the first on May 14, 1996, and the second on July 22, 1997. At the time of trial, the mother was employed as an environmental analyst by the Massachusetts Department of Environmental Protection, while also working as a reservist with the Air National Guard at Otis Air Force Base on Cape Cod, an aerobics instructor and a yard and landscaping worker. The father is employed as a dental hygienist. He was also employed by the Air National Guard at Otis Air Force Base, but retired from that service in November, 2003.

The couple's older son was reported by his teacher to be "making progress academically, but . . . at the bottom of his class and still behind the other students both academically and behaviorally." He received federally funded supplemental services to assist him with "math word problems" and reading

---

[2]On the complaint of the defendant, Patrick Miller (the father), which was consolidated with the mother's complaint for modification, the judge concluded that the mother was in contempt of the judgment of divorce nisi, and entered certain orders accordingly. The contempt judgment does not figure materially in this appeal.

comprehension. The second son, about a year younger, was diagnosed at the age of sixteen months with pervasive developmental disorder, not otherwise specified, and received intensive services for his special needs until he was three years old. He was reported to be performing at grade level, and an evaluation indicated that he no longer had academic special needs.[3] The mother and father each appear to be caring and effective parents, and the children enjoy close relationships with each parent.

The mother met Steven Pizzino, her present husband, in May, 2001, while she participated in Air National Guard training in Georgia. Pizzino has been a member of the United States Air Force since 1988, held the rank of technical sergeant E-6 at the time of trial, and was stationed at Shaw Air Force Base in South Carolina. He was scheduled to be promoted to master sergeant in January, 2005. Divorce proceedings between the mother and father ensued, culminating in a judgment of divorce nisi entered on August 9, 2002. The judgment assigned physical custody of the children to the mother while providing for reasonable visitation by the father, and placed legal custody of the children in the parents jointly. The judgment incorporated a separation agreement[4] that, among other things, prohibited removal of the children from Massachusetts by either parent without the prior written agreement of the other parent or permission of the Probate and Family Court.

On May 5, 2003, the mother filed a complaint for modification of the divorce judgment wherein she sought permission to remove the children from Massachusetts to South Carolina and to alter the father's visitation rights accordingly. The father filed an answer opposing removal, as well as his own complaint for contempt (see note 2, *supra*).[5] The judge appointed a guardian ad litem to investigate and report on the question of removal. Her report, which recommended against allowance of the removal request, was filed on December 17, 2003. At about this

---

[3]The parties appealed the decision, but we are unaware of the outcome.

[4]All provisions of the separation agreement relating to the children were also merged in the judgment.

[5]The mother responded with a counterclaim of her own alleging contempts on the part of the father.

time, the mother accepted a position with Environmental Projects Group in South Carolina at a starting base salary lower than what she earned in her Massachusetts employment, but with opportunities for commissions and bonuses. She married Pizzino on August 28, 2004. Pizzino's military status precluded the possibility of a move to Massachusetts on his part.

A trial on the mother's complaint for modification and the alleged contempts was conducted in November and December, 2004. The judge found that there was no "real advantage" to the mother in moving away from Massachusetts, stating that she "has not shown a good and sincere reason for wanting to move to South Carolina. The only reason given to the Court was the Mother's new husband, Mr. Pizzino, currently resides on a military base in South Carolina." In so concluding, the judge found that Pizzino, a noncommissioned officer in the military, was subject to reassignment, thereby inviting one or more subsequent uprootings of the children; the mother would be likely to earn less money, and her job security would be lower, than was the case in her position in Massachusetts; and the mother, who had lived in Massachusetts her entire life, would be leaving an effective support system consisting of her mother and sister and entering an environment in which she had no other family.

In evaluating the mother's proposed move, the judge gave weight to the possibility that the move was inspired, at least in part, by the mother's desire to separate the children from the father. In this regard, the judge found that the mother kept the father uninformed on various subjects and did not encourage the children to communicate with him.[6] The judge also quoted the opinion of the guardian ad litem that "Mother's desire to move is motivated by a desire to interfere with the relationship between [the two boys] and their father."[7]

Turning from the mother's reasons for moving, the judge

---

[6]These findings were obviously also relevant to the claims of contempt, and supported the judge's conclusion that the mother was in contempt of the divorce judgment in various respects.

[7]This of course is not a finding. We reiterate the oft-repeated request of the Supreme Judicial Court and of this court that judges not simply state evidence in lieu of making actual findings. We need to know what the judge finds, not

concluded separately that "[a] move to South Carolina would not be in the best interests of these children." He rejected the mother's contention that the job in South Carolina would give her more time to be with the children, finding instead that the job's travel requirements would reduce the time available for her to care for the children.[8] The judge found as well that the children would attend schools in South Carolina that were inferior to those they attended in Massachusetts; military base housing was not of a quality equal to the housing they enjoyed in Massachusetts; the South Carolina school system would not treat the children's special needs as effectively; and "[t]he socioeconomic level where the children would live in South Carolina is far below the neighborhood in which they currently reside." Finding that both boys "have demonstrated difficulty with transition both at home and at school," the judge expressed concern that the children would be separated both from their father, to whom they had a "strong attachment," and from their grandmother, who cared for the children when the parents were either working or on military assignment. In return, the children's only family contact in South Carolina other than their mother would be Pizzino, who had to date spent little time with them.

2. *Discussion.* The removal from the Commonwealth of children of divorced parents is governed generally by G. L. c. 208, § 30, as amended through St. 1986, c. 462, § 9, which provides that such children, if less than an age at which they are capable of granting or withholding consent themselves, may be removed by consent of both parents or, failing that, by order of the court "upon cause shown."[9] "The words 'upon cause shown' mean only that removal must be in the best interests of the child . . . ." *Yannas,* 395 Mass. at 711. Determining the

merely what testimony has been given. See *Commonwealth* v. *Rivera,* 441 Mass. 358, 363 n.4 (2004).

[8]He concluded also that the additional income the mother earned in Massachusetts at her secondary jobs was not required to meet her current expenses.

[9]General Laws c. 208, § 30, states in relevant part: "A minor child of divorced parents who is a native of or has resided five years within this commonwealth and over whose custody and maintenance a probate court has jurisdiction shall not, if of suitable age to signify his consent, be removed out of this commonwealth without such consent, or, if under that age, without the consent of both parents, unless the court upon cause shown otherwise orders."

best interests of a child can be difficult under the best of circumstances, and the disruptions in a child's life as the result of divorce, or the separation of parents, obviously alter the situation for the worse. There must be a "realization that after a divorce a child's subsequent relationship with both parents can never be the same as before the divorce." *Rosenthal* v. *Maney*, 51 Mass. App. Ct. 257, 266 (2001), quoting from *Yannas*, 395 Mass. at 710.

Since 1985, we have applied the criteria of the *Yannas* decision. Stated succinctly, we look first at the reasons underlying the desire of the parent with physical custody (usually the mother) to move. "[T]he first consideration is whether there is a good reason for the move, a 'real advantage.' " *Yannas, supra* at 711. The advantage may be economic; it may be support of family residing in another jurisdiction; or it may be any other "good, sincere reason for wanting to remove." *Ibid.* "[T]he presence or absence of a motive to deprive the noncustodial parent of reasonable visitation" is also a relevant consideration. *Ibid.* It follows that a supportable finding that there is no "real advantage" to the custodial parent from the contemplated move ends the analysis, and requires a determination that the judgment shall not be modified to permit the removal.

Should it be found that there is a genuine, recognizable advantage to the custodial parent from the move, the inquiry then turns to whether the move is consistent with the children's best interests. It is important to emphasize that consideration of the advantages to the custodial parent does not disappear, but instead remains a significant factor in the equation. "[B]ecause the best interests of a child are so interwoven with the well-being of the custodial parent, the determination of the child's best interest requires that the interests of the custodial parent be taken into account." *Yannas*, 395 Mass. at 710, quoting from *Cooper* v. *Cooper*, 99 N.J. 42, 54 (1984). Common sense demonstrates that there is a benefit to a child in being cared for by a custodial parent who is fulfilled and happy rather than by one who is frustrated and angry.

In determining a child's best interests, consideration must be given "to whether the quality of the child's life may be improved by the change (including any improvement flowing from an

improvement in the quality of the custodial parent's life), the possible adverse effect of the elimination or curtailment of the child's association with the noncustodial parent, and the extent to which moving or not moving will affect the emotional, physical, or developmental needs of the child." *Yannas*, 395 Mass. at 711. In addition, "the interests of the noncustodial parent must be considered." *Ibid*. Apart from the benefit to the child of continued association with the noncustodial parent, that parent has an independent interest in continued, meaningful involvement with the upbringing of his or her child. "[T]he Due Process Clause of the Fourteenth Amendment [to the United States Constitution] protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children." *Blixt* v. *Blixt*, 437 Mass. 649, 653 (2002), cert. denied, 537 U.S. 1189 (2003), quoting from *Troxel* v. *Granville*, 530 U.S. 57, 66 (2000). While "[t]he fact that visitation by the noncustodial parent will be changed to his or her disadvantage cannot be controlling," *Yannas*, *supra* at 711, the separate right of that parent to a meaningful role in the child's life is a factor that must be taken into account.

These criteria have been applied on several recent occasions. See *Dickenson* v. *Cogswell*, 66 Mass. App. Ct. 442, 449-450 (2006) (deferring to judge's view that it was not in child's best interests to permit move to California where "bicoastal existence" would be tiring and stressful, financial security would diminish and there would be negative impact on important relationship with father); *Cartledge* v. *Evans*, 67 Mass. App. Ct. 577, 581-582 (2006) (divided court concluded that subsidiary findings did not support denial of removal to adjoining State); *Wakefield* v. *Hegarty*, 67 Mass. App. Ct. 772, 777-778 (2006) (affirming conclusion that move to St. Croix was in child's best interests because of improvement in life of mother, greater access to mother and extended family, and greater educational opportunities). See also *Mason* v. *Coleman*, 447 Mass. 177, 183-186 (2006) (examination of "best interests" of children in context of joint physical custody). Assuming the application of appropriate legal standards, the cases plainly turn on fact finding. See *Yannas*, 395 Mass. at 712. Where subsidiary findings are not clearly erroneous, we will generally not attempt to

make the ultimate decisions at the appellate level. The trial judge is in a position far superior to our own with respect to these judgments, and absent an abuse of discretion, we do not presume to interfere.

In the present case, the question is whether fact finding has taken place in the light of properly applied legal criteria. The judge plainly discounted the significance of the mother's marriage to Pizzino. In addressing the subject of "real advantage," the judge illuminated his view of the marriage by finding: "The Mother has not shown a good and sincere reason for wanting to move to South Carolina. The only reason given to the Court was the Mother's new husband, Mr. Pizzino, currently resides on a military base in South Carolina." Elsewhere, he stated: "Even if this move [to South Carolina] was in the best interests of the custodial parent, *which this Court finds that it is not*, it is not necessarily in the best interests of the children" (emphasis supplied).

It appears that the judge may also have been influenced in his view of the mother's remarriage and accompanying desire to move by his opinion that no changed circumstances were present, and thus no ground existed for modifying the divorce judgment. He found, in this regard, that the mother "developed her relationship with Mr. Pizzino while she was still married to Father and prior to their divorce in 2002." He concluded from this that any change in circumstances occurred prior to the divorce, and therefore did not justify a modification. His ruling is inconsistent with G. L. c. 208, § 28, as amended through St. 1993, c. 460, § 60 ("Upon a complaint after a divorce . . . , the court may make a judgment modifying its earlier judgment as to the care and custody of the minor children of the parties provided that the court finds that a material and substantial change in the circumstances of the parties has occurred and the judgment of modification is necessary in the best interests of the children"). Changed circumstances are those that occur subsequent to the judgment of divorce or subsequent to a prior modification. See *Downey* v. *Downey*, 55 Mass. App. Ct. 812, 815 (2002). In the present case, the mother's marriage is plainly a material and substantial change in circumstances occurring subsequent to the date of divorce. The judge's contrary treat-

ment contributed to his devaluation of the mother's marriage as a factor to be considered, and may well have had a significant effect on his over-all treatment of the case.

"[W]e consider a judicial evaluation of the soundness of a sincere decision to move to be with a new spouse to be an extremely sensitive and problematic inquiry." *Dickenson* v. *Cogswell*, 66 Mass. App. Ct. at 448. In *Dickenson*, we did not examine the judge's conclusion that a desire to accompany a new spouse was not a good reason for a move because we were satisfied that his analysis of the child's best interests was sound and therefore that his decision not to approve removal was justified. *Id.* at 448-449. Today, we conclude that a sincere desire to be with a spouse is, per se, a good and sufficient reason that requires a finding that there is a real advantage to the custodial parent in moving.[10] It is not our function as judges to conduct reviews of the wisdom of decisions of competent adults to marry. Once the fact of the remarriage is accepted, it follows that the desire of a spouse to be with his or her marital partner is a natural and appropriate response that the law is required to acknowledge. A finding that there is no "real advantage" to the spouse in such a move is illogical and impermissible.

We recognize that removal of a child is not defensible if undertaken "to deprive the noncustodial parent of reasonable visitation." *Yannas*, 395 Mass. at 711. In the present case, the judge's findings regarding a possible motive in this regard are unclear. He stated that he found credible "the evidence that suggests that Mother's decision to move *may* be motivated by a desire to interfere with Father's relationship with the minor children" (emphasis supplied). The conclusion, expressed as a possibility, appears to be a product of his findings (challenged by the mother) that the mother excluded the father and failed to keep him informed in various respects, as well as of the concern of the guardian ad litem that geographic distance would aggravate these problems. The conclusion is, however, offset by another statement that "Mother's desire to live with her husband *could be considered* a good and sincere reason for removing her

[10]This presupposes that the remarriage has not been contracted for some unlawful purpose, or is otherwise a sham marriage.

children to South Carolina" (emphasis supplied), with a citation to *Signorelli* v. *Albano*, 21 Mass. App. Ct. 939, 941 (1985) (move to be with husband, with whom mother had just had a baby, deemed supported by "a good reason").

The judge may have been struggling with the possibility, not infrequent given the nature of these situations, that both motives were present. It is not difficult to conceive that a custodial parent may sincerely desire to move to be with a new spouse, while also perceiving a benefit to himself or herself in separating the children from the former spouse. Mixed motives of these kinds can be difficult to unravel. To the extent possible, a trial judge must attempt to identify whether a proper or improper motive is the predominant stimulus for the custodial parent's desire to move. "The judicial safeguard of th[e]se interests [of parents and child] lies in careful and clear fact-finding." *Yannas, supra* at 712. However, if the mixed motives are so intertwined as to be inseparable, and the judge is unable to determine a predominant objective in the custodial parent, we believe that if the judge concludes that the desire to be with the new spouse plays at least an important part in bringing about that parent's desire to remove, then such a finding satisfies the requirement that the move bring about a real advantage to the custodial parent.

It follows, therefore, that on remand the judge must accept the mother's remarriage and her accompanying desire to be with her husband as sound reasons for her contemplated removal unless he were to find that her wish to move is motivated principally by a desire to frustrate the father's visitation rights. Should the judge determine that the move is in fact legitimately advantageous from the mother's viewpoint, he should turn, then, to the question whether the best interests of the children are served by a move that is defensible from the viewpoint of a real advantage to the mother. Such a move, even though advantageous to the custodial parent, may be precluded because it is not in the children's interest. See *Yannas*, 395 Mass. at 711 ("That the move is in the best interests of the custodial parent does not mean that it is automatically in the best interests of the child"). In the present case, the judge found, on conflicting evidence, that the proposed move to South Carolina was not in

the children's best interests because of considerations of school-
ing, housing, transition issues, financial security and separation
from family, including their father. Ordinarily we would defer
to such findings.

Here, however, the erroneous treatment of the mother's mar-
riage and accompanying desire to be with her husband
penetrated and influenced the findings regarding the children's
best interests. Put differently, we do not know whether those
findings would have been otherwise had the judge given ap-
propriate weight to the mother's preference. As we have stated,
consideration of the position of the custodial parent does not
disappear after it is concluded that there is a real advantage to
her in moving. Rather, there must be continued consideration of
the quality of life of the custodial parent for the simple reason
that her quality of life has a direct and immediate impact on the
welfare of the children. See *Rosenthal* v. *Maney*, 51 Mass. App.
Ct. at 268-269.

Because the judge found, perhaps erroneously, that the
proposed move offered no real advantage to the mother, he
obviously gave no weight to any real advantage to her in his
calculus regarding the children's best interests. We have
concluded, however, that his finding in this regard cannot be
sustained because it is based on a determination that the
mother's marriage and her accompanying desire to be with her
husband do not establish a real advantage from her viewpoint.
If a real advantage to the mother is demonstrated, that must be
a factor in deciding whether the contemplated move is consistent
with the welfare of the children.

Finally, we address the mother's contention that the judge
relied excessively on the report of the guardian ad litem. The
report was plainly admissible pursuant to G. L. c. 215, § 56A,
inserted by St. 1975, c. 400, § 72.[11] In reporting on specified
topics, "the guardian ad litem acts as an arm of the court and is

---

[11]"Any judge of a probate court may appoint a guardian ad litem to
investigate the facts of any proceeding pending in said court relating to or
involving questions as to the care, custody or maintenance of minor children
. . . . Said guardian ad litem shall, before final judgment or decree in such
proceeding, report in writing to the court the results of the investigation, and
such report shall be open to inspection to all the parties in such proceeding or
their attorneys."

an integral part of the judicial process." *Sarkisian* v. *Benjamin*, 62 Mass. App. Ct. 741, 745 (2005). Guardian ad litem reports may properly contain hearsay information. See *Adoption of Georgia*, 433 Mass. 62, 68 (2000), quoting from *Adoption of Sean*, 36 Mass. App. Ct. 261, 263 (1994). "All that is required is that the guardian ad litem be available to testify at trial and that the source of the material be sufficiently identified so that the affected party has an opportunity to rebut any adverse or erroneous material contained therein." *Adoption of Georgia, supra* at 69, quoting from *Adoption of Sean, supra* at 263-264. The guardian ad litem is free to make recommendations, "provided the judge draws his own conclusions and understands that 'the responsibility of deciding the case [is] his and not that of the guardian.' " *Delmolino* v. *Nance*, 14 Mass. App. Ct. 209, 212 (1982), quoting from *Jones* v. *Jones*, 349 Mass. 259, 265 (1965).

Here, the guardian ad litem was qualified; the mother received her report; the guardian was subject to cross-examination; and the mother was entitled to present evidence that rebutted the guardian's findings. It was for the judge to decide whether to credit the guardian's report and testimony. We see no indication that he failed to think critically and independently about the subject matter, although, as we have indicated, certain of his findings may have been influenced by the application of improper criteria. The guardian's report was filed on December 17, 2003, prior to the mother's marriage to Pizzino. The report does, however, refer to Pizzino as the mother's fiancé and refers to her desire to marry him. We cannot tell to what extent the guardian may have been influenced by a view, if indeed she had a view, that the marriage was not by itself a good reason for the move, and we leave that for possible exploration on remand.

3. *Disposition.* The judgment is vacated insofar as it denies the mother's request to remove the children to South Carolina, and the case is remanded for further proceedings consistent with this opinion. The judge shall receive additional evidence regarding the period subsequent to the date of judgment and may, in his discretion, receive additional evidence with respect to circumstances existing prior thereto.

*So ordered.*