PATRICIA MARIE ALTOMARE *vs.* JOHN NICHOLAS ALTOMARE.

No. 09-P-585.

Worcester. January 14, 2010. - September 8, 2010.

Present: KATZMANN, GRAINGER, & MEADE, JJ.

*Divorce and Separation,* Findings, Child custody, Amendment of judgment, Division of property. *Minor,* Custody. *Parent and Child,* Custody of minor.

The record of a divorce proceeding demonstrated that the wife, who sought to move with the parties' children to another part of the Commonwealth, had sole physical custody of the children [602-606] and demonstrated a real advantage to her in relocating [606-608]; thus, where the probate judge erroneously found that the proposed move offered no real advantage to the mother, and accordingly gave no weight to that advantage in his calculus regarding the children's best interests regarding the proposed move, this court remanded the matter for a redetermination of the best interests of the children [608-610].

In a divorce proceeding, the probate judge, in distributing the marital estate, did not clearly err in finding that the parties' parents all contributed in significant but approximately equal amounts to the parties' acquisition of the marital estate, and the judge acted within his discretion in dividing the marital estate, including premarital assets, equally. [610-611]

COMPLAINT for divorce filed in the Worcester Division of the Probate and Family Court Department on June 1, 2006.

The case was heard by *David G. Sacks,* J.

*Wendy H. Sibbison* for the wife.

*Michael P. Angelini* for the husband.

KATZMANN, J. This case involves an appeal from a judgment of divorce between Patricia Marie Altomare, the wife (also the mother) and John Nicholas Altomare, her husband (also the father), entered in the Probate and Family Court. The wife appeals the denial of her request to move with the parties' children to another part of the Commonwealth and challenges the equal distribution of the marital estate in the judgment, as well as the award of "shared legal and physical custody" of the children.

We vacate and remand the portions of the judgment regarding relocation, but affirm the distribution of the marital estate.

*Background.* In 2006, the wife filed a complaint for divorce after twenty years of marriage. The couple has three children. At the time of trial in July, 2008, the oldest was sixteen years old; the middle child was twelve years old; and the youngest was eleven years old. The children all live with the wife in West Boylston. The husband lives and works nearby in Worcester. An earlier trial on custody matters occurred in December, 2007. In January, 2008, a Probate and Family Court judge denied the wife's request to move with the children to Scituate.

In September, 2008, a Probate and Family Court judge entered a judgment on all of the divorce matters. First, with respect to custody, the judgment ordered, "The parties shall have shared legal and physical custody of the three minor children of the marriage"; "The children shall reside with the Wife"; and "The Husband shall have the right to visit the minor children at reasonable times, as agreed upon by the parties." Second, the judgment ordered the husband to pay to the wife $1,000 per week in child support and $600 per week in alimony. Finally, the judgment split the marital estate in half, with each party keeping assets valued at $1,864,321.

*Discussion.* A trial judge's findings of fact will not be set aside unless clearly erroneous. *Barboza* v. *McLeod*, 447 Mass. 468, 469 (2006). The reviewing court will give due regard to the judge's assessment and determination of the credibility of the witnesses in making such findings. See *Custody of Eleanor*, 414 Mass. 795, 800 (1993).

I. *Relocation.* The wife filed a pretrial motion seeking permission to move with the children to Scituate, located seventy-five miles east of West Boylston. The judge applied G. L. c. 208, § 30, governing removal from the Commonwealth, and rejected the wife's petition. The wife challenges this decision.

A. *Legal principles.* As a preliminary matter, we note that G. L. c. 208, § 30, governs removal of children from the Commonwealth and does not address relocation within the Commonwealth. We apply out-of-State removal principles to in-State moves, however, not routinely, but in cases "where the relocation would evidently involve significant disruption of the

noncustodial parent's visitation rights and the parents cannot agree." *D.C.* v. *J.S.*, 58 Mass. App. Ct. 351, 355-356 (2003). We observed in that case that "the consideration and evaluation of the visitation and other custodial conditions for the child that would result from relocation to a distant part of the State will resemble those applied to removal beyond the State boundaries." *Id.* at 355. See *Tammaro* v. *O'Brien*, 76 Mass. App. Ct. 254, 262 n.13 (2010) (noting that "even where a parent does not seek to leave the Commonwealth, we have suggested" that the considerations "will resemble those applied to removal beyond the State boundaries"), quoting from *D.C.* v. *J.S.*, *supra* at 355. While the defendant suggests that the law is unsettled, we reiterate that out-of-State considerations informing G. L. c. 208, § 30, also apply to situations such as the one before us.

General Laws c. 208, § 30, provides that a minor child of divorced parents who has resided in Massachusetts for at least five years, if too young to consent on his or her own behalf, may not be removed from the Commonwealth without the consent of both parents "unless the court upon cause shown otherwise orders." G. L. c. 208, § 30. "The purpose of the statute is to preserve the rights of the noncustodial parent and the child to maintain and develop their familial relationships, while balancing those rights with the right of the custodial parent to seek a better life for himself or herself in another State or country." *Wakefield* v. *Hegarty*, 67 Mass. App. Ct. 772, 775 (2006), citing *Yannas* v. *Frondistou-Yannas*, 395 Mass. 704, 712 (1985).

If the party seeking removal is the sole physical custodian of the children, then the judge must consider the request under a two-prong test set forth in *Yannas*, *supra*. First, the judge must consider "whether there is a good reason for the move, a 'real advantage.' " *Wakefield*, *supra*, quoting from *Yannas*, *supra* at 711. "[T]he 'real advantage' test is grounded on the 'realization that after a divorce a child's subsequent relationship with both parents can never be the same as before the divorce . . . [and] the child's quality of life and style of life are provided by the custodial parent.' . . . Although the best interests of the children always remain the paramount concern, [b]ecause the best interests of a child are so interwoven with the well-being of the custodial parent, the determination of the child's best interest requires

that the interests of the custodial parent be taken in account." *Yannas*, *supra* at 710, quoting from *Cooper* v. *Cooper*, 99 N.J. 42, 54 (1984). See *Cartledge* v. *Evans*, 67 Mass. App. Ct. 577, 579-580 (2006). To satisfy the real advantage test, the custodial parent must demonstrate "a good, sincere reason for wanting to remove to another jurisdiction" and "the soundness of the reason for moving, and the presence or absence of a motive to deprive the noncustodial parent of reasonable visitation." *Yannas*, *supra* at 711. "[A] supportable finding that there is no 'real advantage' to the custodial parent from the contemplated move ends the analysis." *Pizzino* v. *Miller*, 67 Mass. App. Ct. 865, 870 (2006).

Second, if the "real advantage" test is satisfied, the judge must consider whether the move is in the best interests of the children; thus "consideration must be given 'to whether the quality of the child's life may be improved by the change (including any improvement flowing from an improvement in the quality of the custodial parent's life), the possible adverse effect of the elimination or curtailment of the child's association with the noncustodial parent, and the extent to which moving or not moving will affect the emotional, physical, or developmental needs of the child.' " *Id.* at 870-871, quoting from *Yannas*, *supra* at 711. "Assuming the judge's findings are not clearly erroneous, we review [the] determination of the best interests of the children only for an abuse of discretion." *Mason* v. *Coleman*, 447 Mass. 177, 184 (2006), citing *White* v. *Laingor*, 434 Mass. 64, 68 (2001).

If the party seeking removal shares physical custody with the other parent, then the " 'best interest' calculus pertaining to removal is appreciably different from those situations that involve sole physical custody. . . . Where physical custody is shared, a judge's willingness to elevate one parent's interest in relocating freely with the children is often diminished. No longer is the fortune of simply one custodial parent so tightly interwoven with that of the child; both parents have equal rights and responsibilities with respect to the children. The importance to the children of one parent's advantage in relocating outside the Commonwealth is greatly reduced." *Mason*, *supra* at 184-185. "The advantage to the moving parent becomes merely a relevant factor in the over-all inquiry of what is in the child's best

interests." *Wakefield, supra* at 776, citing *Mason, supra* at 185-186.

In sum, *Yannas* and *Mason,* standing at two different ends of the custody spectrum, present two models for the relocation calculus. See *Prenaveau* v. *Prenaveau,* 75 Mass. App. Ct. 131, 139 (2009) ("The main distinction between the analyses set forth in the two cases comes down to the weight that should be assigned to the benefits that relocation would provide the parent seeking the move"). How a custody arrangement is categorically defined will trigger which of the two models is implicated. That being said, we should note that such categorizations, which are utilized inconsistently, can obscure more than they illuminate. See *Abbott* v. *Virusso,* 68 Mass. App. Ct. 326, 329 n.9 (2007). As we have noted approvingly, "[t]erms such as legal and physical custody are eschewed by the [American Law Institute], which instead utilizes terminology descriptive of the various, discrete parenting responsibilities and functions, 'recogniz[ing] that different types of involvement in the child's life are relevant in different ways to the various allocation issues.' " *Abbott, supra,* quoting from ALI Principles of the Law of Family Dissolution § 2.03 comment g (2002). It thus follows that even where the party seeking to relocate is characterized as the sole physical custodian, it is appropriate that the decisional calculus consider the functional responsibilities and involvement of each parent.

B. *Shared or sole physical custody.* Here the trial judge found that the wife and husband shared physical custody and applied the "best interests" standard in denying the wife's petition to relocate within the Commonwealth. The wife challenges the finding that the parents shared physical custody.

"Shared physical custody contemplates that 'a child shall have periods of residing with and being under the supervision of each parent . . . assur[ing] . . . frequent and continued contact with both parents.' " *Mason, supra* at 182, quoting from G. L. c. 208, § 31. Sole physical custody "generally reflects that the children reside with only one parent 'subject to reasonable visitation by the other parent.' " *Mason, supra,* quoting from G. L. c. 208, § 31. Our cases make clear that, in the context of spousal relocation, the label we attach to custodial status

results from a factual inquiry. See, e.g., *Wakefield, supra* at 776; *Abbott, supra* at 329 n.9.

In *Mason*, the court held that the parents had "joint physical and legal custody" where during the marriage both parents took the part of a primary caretaker and after separation the "parents divided physical custody of the children approximately equally." *Mason, supra* at 178-179. By contrast, a parent has sole physical custody where the parent "has been exercising the clear majority of custodial responsibility." *Abbott, supra* at 330, quoting from ALI Principles of the Law of Family Dissolution § 2.17(4)(a). In *Abbott*, we applied the "real advantage" standard to the wife's request to move out-of-State where the son lived primarily with her but also visited with the father on a regular basis.

Here, as in *Abbott* and unlike in *Mason*, the children reside with the wife in her home, subject to reasonable visitation with the father. The children spend the majority of their evenings with the wife and spend every other weekend and one night per week with the husband. Furthermore, the judge found that the wife has "unquestionably been more of a traditional 'custodian' in terms of the supervision of the children and all that entails." Finally, in the divorce judgment, the judge ordered that the children would reside with the wife with the husband having the right to visit at reasonable times, as agreed upon by the parties.

In sum, although the judge characterized the custody arrangement as "shared legal and physical custody," because the substance of the order places the children under the primary responsibility of the wife, and because as a functional matter that has indeed been the wife's responsibility, we conclude that the wife had sole physical custody.

C. *Real advantage analysis.*[1] We review the judge's decision in light of our conclusion that the wife has sole physical custody of the three minor children of the marriage. The wife testified that her marital difficulties caused her to see a psychotherapist. She testified that she sought to leave West Boylston, a small town of 6,000 people, because she felt uncomfortable living

---

[1]Although the judge determined that because there was a shared custody arrangement the *Mason* standard applied, he also analyzed the removal issue under the two-part *Yannas* test implicated by sole physical custody.

near and running into (once a week) the woman with whom the husband had been having a romantic relationship.[2] She said that she felt "horrible" when she encountered this woman. She wanted to locate to Scituate because she believed that there would be a support network which could help restore her emotional health. The wife testified:

> "It's been very emotional and very difficult. I'm essentially a sad person, and I think my only chance to be happy again, and the only chance for my children to see me as a happy person, is to move to Scituate. . . . I think it would be like seeing the sun again. I think I would have a new lease in life. It would be a fresh start. I would have new enthusiasm for life. I would have new energy for life and for my children. I would be . . . surrounded by people who have been exceptionally supportive and who love me, and who love my children. I think it would make a huge, huge impact on my life and the life of my children — positive impact."

The judge noted that the move would accomplish the wife's goal of not having contact with the woman with whom her husband was having a relationship, but concluded that, under step one of the "real advantage" analysis, she failed to present sufficient evidence demonstrating a "real advantage" to her in moving with the children to Scituate. The judge found that "[w]hile there are individuals in the Scituate area with whom [the wife] has long-standing relationships and [who] would provide her emotional and even child-related support, it is also the case that [the wife] has no particular personal, family or professional roots in Scituate." The judge also pointed out that the wife did not offer any specificity as to her professional plans as an attorney with "no employment investigation other than to receive Probate and Family Court fee-generating appointments."

"The focus at this stage [of the real advantage determination] is on the reasoning of the custodial parent." *Dickenson* v. *Cogswell*, 66 Mass. App. 442, 448 (2006). Relocating in order to

---

[2]The wife also testified that she and the woman had been friends at one time, but that the woman and the husband began their relationship prior to the marital break-up.

avoid painful emotional encounters and to develop emotional support is a sincere reason, and we are unable to say that it is not a good reason "for the purposes of requiring the full balancing of interests set out in the second, and most important, part of the analysis required by *Yannas*." *Dickenson, supra* at 448. It is undisputed that a parent's happiness can affect the quality of parenting. We are also mindful of the wife's interest in developing a support network that could help her emotionally during this difficult period in her life, especially considering that she has no roots in the West Boylston area, where her husband grew up. We also note that there is no evidence that the wife seeks the move in order to deprive the husband of access to his children. See *Pizzino* v. *Miller*, 67 Mass. App. Ct. at 873. Indeed, to the contrary, the judge found that the husband and wife "do a commendable job of making arrangements about their children." The wife stated that she would be willing and able to make sacrifices including driving the children to and from Worcester in order to allow the husband to maintain his good relationship with the children. The wife has demonstrated a "real advantage" to her in relocating.

D. *Best interests analysis.* Regarding the second *Yannas* prong, the probate judge first considers the effect of removal on the child's interests. Even if a move is advantageous to the custodial parent, that "does not mean that it is automatically in the best interests of the child." *Yannas* v. *Frondistou-Yannas*, 395 Mass. at 711. Here, the judge found that the children had many friends in the Worcester area and were engaged in a wide variety of activities, and that a relocation would negatively affect those relationships and activities. Further, the children regularly spend time with their paternal grandparents and aunt, and relocation would diminish that beneficial contact. The judge also found the wife had not provided any detail or evidence regarding the comparative quality of the Scituate schools relative to the West Boylston school system which the children were attending. Regarding the interest of the father, who is the noncustodial parent, the judge found that he (like the wife) is "an excellent and involved" parent, playing an active and regular role in the children's lives. The judge found that the wife's move with the children to Scituate would significantly disrupt the husband's

visitation rights. The judge found that a drive from West Boyl-ston to Scituate would take seventy-five minutes without traffic and that the husband — whose business requires his presence in Worcester — would not be able to participate in the children's extracurricular activities.[3] Regarding the interests of the wife, as set forth above, the judge found no "real advantage" to her.

Turning to the balancing of interests, because the judge "found . . . erroneously that the proposed move offered no real advantage to the mother, he . . . gave no weight to any real advantage to her in his calculus regarding the children's best interests." *Pizzino, supra* at 875. We cannot conclude that this erroneous treatment did not influence his findings regarding the children's best interest. "[C]onsideration of the position of the custodial parent does not disappear after it is concluded that there is a real advantage to her in moving. Rather, there must be continued consideration of the quality of life of the custodial parent for the simple reason that her quality of life has a direct and immediate impact on the welfare of the children." *Ibid.* While the father here is an involved and caring parent, the judge's findings and emphasis on disruption of visitation reflect "a *Mason*-like approach to removal," to the diminution of "the mother's [effective] role as sole physical custodian." *Katzman v. Healy, ante* 589, 595-596 (2010).

Accordingly, we remand for a redetermination of the best interests of the children. On remand, the judge should also determine the extent to which the wife's unhappiness in West Boylston affects her children. In assessing the impact of a move on the children, the judge should further determine the views of the children either directly or through the appointment of a

---

[3]The judge found: "Plaintiff proposes to have the children spend one night a week with the defendant; she would drive them to Worcester the night before and pick them up the next morning to bring them to school. This would involve about a three hour round trip by her twice in twelve hours, and two hour and a half trips for the children in that time period. It would take each of them out of their school and extracurricular activities one afternoon/ evening each week. (Plaintiff also proposes alternating weekend trips which are more practical.) The Court is of the opinion that plaintiff is unrealistic in this proposal. In addition to the concerns just described, plaintiff would have to get up and leave Scituate about four-thirty in the morning weekly on the return day. Plaintiff was candid that she is not a morning person. It is unclear what impact the early morning ride would have on the children."

guardian ad litem who could evaluate their expressions of preference in light of each child's age and maturity. Moreover, on remand the judge should more fully assess the practical implication of a move on the father's visitation, including further subsidiary findings regarding alternative visitation proposals which the judge stated were "more practical." We note that the judge's determinations on remand should include relevant evidence of events that transpired after the entry of judgment.

II. *Property distribution issues.* The wife argues that the judge erred in distributing the marital estate by failing to consider cash distributions from her family as contributions to the marital estate. She also argues that he abused his discretion by giving the husband a disproportionate amount of the marital estate.

With regard to the division of marital property, "[a]ny conclusions the judge makes will be reversed only if 'plainly wrong and excessive,' but the judge's findings and rulings must make clear the reasons for these conclusions." *deCastro* v. *deCastro*, 415 Mass. 787, 792 (1993), quoting from *Redding* v. *Redding*, 398 Mass. 102, 107 (1986). General Laws c. 208, § 34, inserted by St. 1975, c. 565, provides that the trial judge "may assign to either husband or wife all or any part of the estate of the other." This "includes property acquired prior to the marriage." *Baccanti* v. *Morton*, 434 Mass. 787, 792 (2001). Also, "[i]nherited assets . . . may comprise part of a marital estate for purposes of possible division under G. L. c. 208, § 34." *Ruml* v. *Ruml*, 50 Mass. App. Ct. 500, 511 (2000). "[A]n equitable, rather than an equal, division of property is the ultimate goal of G. L. c. 208, § 34." *Williams* v. *Massa*, 431 Mass. 619, 626 (2000). Specifically, the purpose of an equitable division of marital property is to compensate each party for their contributions to the marriage. *Heacock* v. *Heacock*, 402 Mass. 21, 24 (1988).

Based on the record, the judge did not clearly err in finding "[t]he parties' parents all contributed in significant but approximately equal amounts to the parties' acquisition of the marital estate." Although the wife contends that the evidence showed that the wife's family contributed close to two million dollars in distributions from family assets toward the acquisition of the marital estate, our review of the record demonstrates that

the ultimate destination of money she received in distributions was not proven.[4]

Moreover, pursuant to G. L. c. 208, § 34, the judge acted within his discretion in dividing the marital estate, including premarital assets, equally. See *Baccanti, supra* at 792-793. There are "no hard and fast rules" governing this allocation. *Williams, supra* at 626. The judge's finding that the parties and their respective families contributed equally to the marital enterprise is supported by the record. Furthermore, considering the statutory factors including the length of the marriage and the division of responsibilities in the divorce judgment — and the judge's order that the husband pay six hundred dollars per week in alimony — the wife has not shown that the equal distribution of the marital assets constituted an abuse of discretion. See *Child* v. *Child*, 58 Mass. App. Ct. 76, 77 (2003) (judge must consider "the length of the marriage, the conduct of the parties during the marriage, the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate, liabilities and needs of each of the parties and the opportunity of each for future acquisition of capital assets and income").

*Conclusion.* For the foregoing reasons, the provisions of the judgment relating to the division of assets are affirmed, but the provisions relating to custody and visitation, as well as the order on the wife's request for relocation, are remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[4]First, while the wife testified that some of the money went into the parties' joint checking and savings accounts that were used for investments and IRAs, she also testified that most of the money went into college funds for their children. Second, the husband testified that he knew that the wife had received some distributions and placed them into the joint savings account, but he also testified that he had no knowledge of what percentage of the funds that she received were deposited into the joint accounts. Finally, the wife ignores the judge's findings that the parties spent one year in the husband's parents' home rent-free while their marital home was under construction, and that the husband's law firm — through which much of the marital estate was acquired — was first established by the husband's father.